Both Nitin and Hippier are on our Twitter feed at the link in the video description. Next argued case is number 19-1048, Fitbit Incorporated against Valencel Incorporated. Mr. Johnson. Thank you, Your Honor. Good morning. May it please the Court. This appeal of the Board's final written decision as to claims 3, 4, and 5 of the 9-4-1 patent rests on three issues. First, the Board's denial of Fitbit's IPR challenge is based on an erroneous claim construction of application-specific interface, API. And that is reviewed de novo here. Second, upon correcting the construction of application-specific interface, or API, the Court need not remand to the Board for further proceedings. And that's because Valencel never presented separate validity arguments for claims 3, 4, and 5 under any construction. Outright reversal, therefore, is warranted. And finally, Your Honors, Valencel's waiver arguments have no merit. I want to start by turning to the claim construction issues with respect to claim 3. The dispute is whether application-specific interface, API, is specific to a particular application or rather to a set of software components more generally. And under Phillips, the claim language, the specification, the extrinsic evidence, all confirm that an application-specific interface, API, is, quote, an application interface that specifies how some software components should interact with each other. But here, the broadest reasonable interpretation standard applies. And if multiple constructions are reasonable, the broadest reasonable interpretation dictates that Fitbit's broader construction is the correct interpretation. And, Your Honor, this is the same construction that was presented in Apple's original petition. And Fitbit relies on the same evidence that was relied upon and referenced in the additional briefing that was requested by the Board after the SAS decision. Also, the final written decision refers to the very same evidence, the same intrinsic evidence, the same site-to-specifications in the claim language. So if we started with the claim language and we look at the term, the claim language equates the term application-specific interface to an API by using parentheses in the claim language. And the claim language tells a person of ordinary skill in the art that this interface is specific to software components as opposed to hardware components like a USB interface. In contrast, if we limit interface to just a particular application, it gives no meaning to the term API, which is a term that appears in the claim language. And if we look at the end of Claim 3, the use of, quote, unapplication, that refers to one or more applications, and it suggests that the data... Well, what do you think the construction should be, assuming that we were to reject your claim construction? If you were to reject my claim construction? Yeah. What's the alternative claim construction? That it's an application interface that works with the software components more generally. I mean, the issue is that it's not directed to... No, but it has to be application-specific is the idea, right? Well, applications... I'm just assuming that... I understand that you've got a strong argument that your claim construction is right. I'm just saying, let's put that aside, assume that we were to reject that. Then what is the correct construction here? Because you make an alternative argument that even under an alternative construction, you still win. I'm trying to understand what that alternative construction is. Understood. What we argue is that the board also erred by failing to consider the evidence that we presented to the board that under the narrower construction... What is the narrower construction? That the application is specific to a particular application. That's bail and sales construction. As opposed to ours, which is broader where it suggests... I'm not sure that they've articulated an alternative construction. Where did they do that? I agree with you, Your Honor. This is us reading the language from what we read from the brief and from what happened below. I don't think that there's a specific articulation of the claim construction, but I do know that the main dispute focuses on whether it's specific to a particular application as opposed to software components more generally. That's the crux of the dispute. We believe that the board erred, first of all, with respect to the claim construction itself, and then second, by failing to consider the evidence that we proffered that even under the narrower construction, the claims were obvious. If we go back and we look at Claim 3, the use of an application at the end of Claim 3 supports Fitbit's construction because it tells the person of ordinary skill that one or more applications are viewed and suggests that the data can be used by more than one particular application. That's right out of the claim language. When you compare the claim language to then the specification, again, the specification confirms Fitbit's broader construction because Column 26, Lines 19 to 21, uses applications, plural, and it tells the person of ordinary skill in the art that other applications can use the same interface. Now, even Valencell agreed in its response brief that in reading the sentences in the specification together, that the passage discloses application-specific interface can use different pieces of data for different particular applications, plural, and that's in their response brief at page 30. The reference to a particular application in the specification means the data can be utilized or used for a particular application as opposed to the data's directed to a particular application, which is what Valencell argues. After the intrinsic evidence, when we turn to the extrinsic evidence, that also confirms Fitbit's construction. Valencell's own expert testified in the deposition that application-specific interface essentially refers to an API and both are basically the same. And because, Your Honor, the experts agree and there's no factual dispute as to here to resolve the Board's entire claim construction determination should be reviewed de novo and reversed. And if the Court agrees that the broader construction applies, then outright reversal of the Board's final written decision is warranted. And that's because Valencell didn't present any arguments that Claim 3 is valid under Fitbit's interpretation other than because it depends from invalid independent Claim 1. Now, there's no dispute here. The Board held Claim 1 is invalid and Valencell didn't appeal that ruling. That decision is final and collateral estoppel applies under the Accenture case. Because they've presented no distinct validity arguments with respect to Claim 3, just as in the Belden case, this Court's decision in Belden, the record is one-sided and reversal is appropriate. And again, as I alluded to, under Erickson v. Intellectual Ventures, the Board also erred by failing to consider Fitbit's prior art evidence that Claim 3 is invalid under the narrower interpretation of application-specific interface. So Fitbit and Apple specifically requested the Board review the evidence in the additional briefing that was requested by the Board after the SAS decision. And the additional briefing cited Apple's request for rehearing, which then explained how the prior art discloses an application-specific interface, even under the narrower interpretation. So what's your argument? I thought I understood it in your brief, and that you were arguing that this was a typographical error. Apple argued in the original petition that there was a typographical error. And in the original petition, Apple also argued and submitted the same claim construction that Fitbit relies upon here. After the SAS decision came out, the Board then requested additional briefing with respect to Claims 3, 4, and 5, which are the claims at issue here. And Apple again identified the same construction in its petition, and it relied upon the same intrinsic evidence in that additional briefing that we rely upon here. And it presented the same specification language, the same claim language, referred to the same extrinsic evidence as well. In its patent owner response, Valencille then argued that the intrinsic evidence didn't support Fitbit's response. In the final written decision, the Board refers to that same intrinsic evidence. Now, Apple did argue originally that there was a typographical error in the original petition, but its construction was exactly the same as what Fitbit argues here. And again, this is reviewed de novo. And in light of the intrinsic evidence and the extrinsic evidence, the claim construction that the Board adopted was incorrect. If the Board's construction is supported by substantial evidence, then your argument as to the extrinsic evidence outweighing it becomes immaterial, right? If the Board – first of all, I would argue, Your Honor, that the claim construction that the Board ultimately adopted is reviewed de novo here. But they didn't adopt a claim construction. That's the problem, right? Well, I believe that they did. I mean, I believe that they ultimately – well, let me – they rejected Fitbit's. They rejected your claim construction, but I don't see that they adopted a claim construction. And in and of itself, that was an error to not articulate what specific claim construction they were using. We do know they rejected Fitbit's. We can conjecture that they were adopting valence cells. Under any scenario, it was error for them not to consider the evidence that we proffered with respect to the prior – with respect to the narrower construction. They simply rely upon the fact that because they rejected Fitbit's construction, that was sufficient, and they refer to that in the final written decision. If we look at Claims 4 and 5, the Board also erred by not construing Claim 4 as dependent upon Claim 3. And there's no dispute that Claim 4 should depend on Claim 3. Valence cell admits that there was a typographical error here, and Claim 4 depends from Claim 3. We know that the Board has authority to construe the claims, and claim construction can be used to correct obvious errors in a patent. That's the Novo Industries case. The Court also has the ability to correct obvious errors, including the ability to fix errors in dependency under the Hoffer v. Microsoft case. And once Claim 4 is correctly construed to depend from Claim 3, there's no remaining dispute that Claims 4 and 5 are invalid. Valence cells never challenge Fitbit's assertion that the prior discloses the limitations in Claims 4 and 5. And because they don't have any remaining validity arguments for Claims 4 and 5, again, reversal is warranted. And I want to respond briefly, Your Honor, to arguments that I anticipate Valence cell will make with respect to the waiver. They argue that Fitbit has waived its ability to challenge the Claims 3, 4, and 5 in this appeal. But Valence cell does not contest that the Board correctly added Claims 3, 4, and 5 to the IPR after the Supreme Court's SAS decision. Valence cell also does not argue that it lacked notice or that it didn't have the opportunity to respond to the invalidity arguments on those claims. Instead, Valence cell complains that Fitbit's original petition didn't address Claims 3, 4, and 5. But Fitbit's own IPR did not control the scope of the IPR on appeal because the Board terminated Fitbit's individual IPR when it granted Fitbit's request to join Apple's IPR. And Fitbit ultimately was added as a party to Apple's already instituted IPR. So Fitbit was not allowed to create a new and different IPR, and it only was allowed to join Apple's already instituted IPR as a party. At the time when Fitbit filed its petition... Is that what it means? I found curious the term as an understudy. Yes. Joined as an understudy. That's correct. What does that mean? It means that your, in this case Fitbit's, Fitbit's IPR was terminated and it was joined with the Apple, into Apple's IPR for all purposes. And ultimately that it served an understudy role. Apple signed the briefs. Apple submitted the... Apple's evidence? There was a, I think there was a process where if Apple or if Fitbit wanted to submit its own paper, it would have, before it could do so, it had to request permission from the Board to do so. Was that request made? There was no, that request was not made because there was no need to make that request. So weren't you kind of stuck as the understudy? You're stuck with what happened? Well, we were stuck, but that's the point. We were stuck as to all issues, right? And so we stood in the shoes, we stood in the trench with Apple in this IPR. And when Fitbit filed its petition, Apple's IPR did not include claims 3, 4, and 5. So Fitbit didn't include those claims in its original IPR. We're in a time situation here where this is before the SAS decision comes down. Claims 3, 4, and 5 were not instituted. We filed our request, knowing it would be futile to file on 3, 4, and 5. Then the SAS decision comes down. We were joined, and our Fitbit, our IPR was terminated in the same order. And so Fitbit remained a party to that IPR. The joinder was at Fitbit's request, was it not? Yes, Your Honor. Okay. And the joinder decision specifically says that all filings will be consolidated. And, in fact, this appeal uses the Apple IPR number. We're not here on Fitbit's IPR number. We're here on Apple's IPR number. And when the board added claims 3, 4, and 5 to the IPR, that addition applied to both Apple and to Fitbit. And the additional briefing was signed by Apple, was also similarly consolidated. I understand your arguments as to – I don't understand if you're making an argument that the board procedurally acted improper. What I expect is that Valencel, based on its briefing, Valencel has argued that we waived the right to challenge claims 3, 4, and 5 because it was not in the original petition that Fitbit filed. Even though you were added to Apple's proceeding and Apple did raise it. That's correct. And even though the fact that the final written decision, the board explicitly held, quote, addressing the status of each challenge claim in this proceeding applies to all parties. All parties. That included Apple and Fitbit, obviously. So since Fitbit was joined as a party to the full IPR, it should now be permitted to appeal any facet of the board's written decision on that IPR. And let me just also say, and then I'll see the rest of my time, if the court believes there was a waiver here, then the court should use its discretion not to apply the waiver since the record below is complete and there's no prejudice in deciding the validity of claims 3, 4, and 5 in this appeal. Okay. Thank you. Let's hear from the other side. I will say this in rebuttal, Mr. Johnson. Mr. Bragg, 11. Thank you, Judge Newman. May it please the court. So what is your construction of application-specific interface, API? You say Fitbit's construction is wrong. What's your construction? Your Honor, you're absolutely correct that Bailenfield did not actually offer its own individual construction. So you're saying it's indefinite? No, Your Honor. Well, then what's your construction? Well, we weren't required to provide a construction. I'm asking you, what's your construction? We accept the reasoning of the board below that the construction offered by Fitbit and Apple was incorrect because it read out application-specific. I understand. But what's your construction? Your Honor, for purposes of this appeal, we would accept the construction that was actually made by the board in a separate IPR, the 317. And that's actually referred to in the appeal. And what is that construction? That construction specifically was that the term application-specific interface is an interface which enables a particular application to utilize data obtained from hardware, such as the at least one motion sensor and the at least one PPG sensor. And that's in the appendix at 17. Now, we accept that only for purposes of this appeal. We did not take a position as to the proper construction. And at that point, we weren't required to because— on incorrect interpretation of the claims. That's not correct because they did argue, and if you look at page A1600 of the appendix, they did argue that even if they were wrong on the claim construction, they should still win on obviousness, right? Your Honor, and that argument was rejected by the board below. No, no, no, but your statement's incorrect. It wasn't based solely on incorrect interpretation. Well, we believe that it was because the only thing in their petition— It's on page 1600. They say that even if the board maintains that no typographical error existed, they should still consider the merits using the board's determined construction. And the way in which the board handled that is it said, this is a new argument. This was not in your petition. The board's request for supplemental briefing was not a broad invitation to change the petition. No, but it is not true that they didn't make the argument. They did make the argument. Your Honor, they did not make the argument in their petition. Okay, where does the board say that they didn't make the argument in the petition? They make that on page 16 of the appendix in the final written decision. Petitioner did not raise this argument in its petition and fails to provide evidence to support this proposition in either the petition or its additional briefing. Wait, wait, wait, wait. Page 16? Yes, in the final written decision. Page 16? Yes. They say we find this new argument is not consistent with petitioner's earlier arguments nor with the disclosure of the 941 patent. So they addressed it and they addressed it by saying— No, but wait. That doesn't seem to me to be the argument that I was talking about. It is, Your Honor, and they note that they further argue— they address this additional argument that Apple made for the first time in its supplemental briefing. And in response— I'm not seeing where they say that the argument made at page 1600 wasn't properly raised. I don't see where they addressed that argument at all. In fact, they say they don't argue that. So the argument that was made by Apple, they said, well, nevertheless, you should analyze this under your construction and still find that the— Where are they referring to that argument? I don't see that the Board ever recognized that Apple made an argument under an alternative claim construction. Your Honor, I believe that this is where they, in fact, do that. And the indication is that they say that petitioner did not raise this argument in its petition. But what is this argument? This argument is not the argument that's made at A1600. There's no reference to that argument. Respectfully, it's our position that, in fact, that's what they're doing here. They don't cite A1600, do they? So what they say about this— Do they cite 1600? They don't cite specifically to that page. They refer to the additional briefing at 4. So I believe that includes that argument. But the way in which they address it, though, is directly instructive of that same argument. It's undisputed. And Fitbit cannot point to any place in Apple's petition where they made this alternative argument. This was a brand-new argument that they raised for the first time in supplemental briefing. And the petition actually doesn't contain any expert declaration that says, okay, assuming we adopt the construction that includes application-specific, nevertheless, here's how the prior art invalidates that. They didn't. Nor can a petitioner merely say, well, if you look at everything that we've provided to you, the argument would be in there somewhere. The requirement is that the petition must specifically point out in the original petition its arguments. And it never made, Judge Diken, an alternative argument like this in its petition. That was new. But it did in the supplemental briefing, right? Well, but— Do you agree that they did in the supplemental briefing? I agree that they referenced that, but their petition doesn't actually make that argument. Oh. And— Why don't you address the correctness of their claim construction? Sure. The linchpin of their argument, as Judge Rayna mentioned, was that there was this pervasive typographical error. That was the argument made below by Apple. Apple never strayed from that argument. They always maintained consistently that this was a pervasive typographical error. Now, the finding by the board— But let's suppose that the argument is properly before us, that this means API. API has a well-known meaning in the art and that that's what they meant here. Why is that wrong? It's wrong for two reasons. First of all, the board said there's no evidence in the intrinsic record of a typographical error. That's a factual finding. And that's subject to review under the substantial evidence standard, not de novo. Yeah, yeah, but I don't think you're addressing what I asked you to address. What I'm asking you to address is forget about the typographical error. Let's assume that they properly argued for the claim construction, the application-specific interface, API, means API as that term is used in the art. What's wrong with that argument? As the board said, that reads out the word specific entirely. The word specific is in there multiple times, both in the abstract, in the specification, in the claim itself. It was referred to several times in the prosecution history, including an amendment to Claim 3. To read out application specific, which is exactly what Apple was contending when it said it was a typographical error, or even leaving aside the typographical error argument, if you were to elevate the extrinsic evidence from the expert over the intrinsic evidence, which specifically uses the word specific, it says application specific. And you have to give meaning to application specific. And as it was pointed out by the board, if there is a typographical error,  and nowhere in the specification does it say that API is intended to mean application programming interface. It could very well mean application-specific programming interface, or the typo could be ASI, as the board pointed out. But the canons of claim construction require that you look first to the intrinsic evidence, and you look to the words of the claim itself. And the legal problem with Apple's proposed construction is it eliminates specific from the claim and elevates this acronym API and what the experts say it means over the actual language and the specification. So there was substantial evidence that there was no typographical error. So we believe that finding of fact is appropriate and reviewed under the substantial evidence test. But more than that, it was a legally incorrect construction. Now, I do want to turn briefly to the dependency issue. So there was no dispute that there was an error in the prosecution of claims. So if there was no dispute, why can't the board correct the error? Why can't they do the same thing as in NOVO, which is to, by construction, determine what the claims mean by correcting the error? Well, there was a dispute among the parties as to how it should be corrected. Apple steadfastly maintained that you correct it by making it dependent on claim one. I want to be very clear here, and Fitbit doesn't shy away from this. Fitbit is making an argument before this court that was never made by Apple below. Do you disagree with that, that it should be dependent on claim one? We agree that the district court can, yes, I disagree with that. It should be dependent on claim three. That was the error. Why can't the board correct that error under the guise or under the purpose of construction as opposed to 112? And it seems to me that the purpose of an IPR, the very stated purpose, and the purpose that has been argued before the Supreme Court, is that it exists to correct errors. Clerical errors, another type of, well, here's an error that all the parties agree upon. So I would say that no party asked for that correction to be made. Apple never asked for the claim to be corrected to depend, the claim four to depend from claim three. No, but they asked that it be construed that way, right? But they didn't ask for it to be construed that way, Judge Steiff. And that's the critical difference here. Fitbit is actually making an argument. I don't understand. How did the issue come up if they didn't ask for it? Because the Apple agreed that there was an issue in claim dependency. But rather than fix that issue, because they wanted to create a section 112 problem in the district court, they asked that it depend from claim one. And they actually asked that it be construed that way. Because section 112 can't be considered in these proceedings. Exactly, exactly. And so the board said, look, we cannot ascertain the correct meaning of this claim. I really don't understand what you're saying. The claims were meant to be dependent on claim three, and you agree with that, right? Yes. So why can't the board fix that? Well, respectfully, it can't be error for the board not to do something that no party asked. No party asked the board to fix this dependency to claim three. What did they ask the board to do? They asked the board to construe it so it was dependent from claim one, which we believe is clearly incorrect. But the board correctly said this gets into 112 issues. And the enabling statute says that the limitations— On the face, the claims four and five say they're dependent on claim one, right? Yes. And the correct interpretation is it's dependent on claim three. We agree with that, but that's not the argument that Apple made. Apple only made the argument, and this is not disputed. Fitbit couldn't point to nowhere that Apple asked it to properly be corrected to claim three. So it cannot be error. And Fitbit cannot come before this court and ask for a remedy that Apple didn't. They're in an understudy role. And as an understudy, they are bound by the arguments that were made below. Even if they were in the primary role, they're still bound by the request that they made below. They can't change that request. Moreover, they can't ask this court to assign error because the board failed to do something that no party asked it to do. They are asking for a remedy that was never requested below. It was never briefed below. It was never presented below. The board did the correct thing. And it said that because it could not ascertain the scope of the claims because of this antecedent basis issue, that it would decline to do so. Moreover, this is not a problem without a remedy. I suggest as a matter of policy, Section 112 issues should be reserved to the district court. Other boards in similar situations have deferred. This isn't a 112 issue. It's a question of claim construction. Well, respectfully, it presents as a 112 issue, Judge Zeick, as the board found. The board found that this did present indefinite issues, indefiniteness issues. So the court should not extend the ability because that's such a slippery slope. Where do you stop? Do you allow corrections only where the parties agree that there was an error? We have a standard. We have a case called NOFA. We have an established standard in which by construction certain clear errors can be corrected. And I don't understand your theory that the board lacks that authority, which exists in the district court when the district court is construing claims. Actually, my argument is that the court should not extend this to the board, but more so it can't be error for the board not to do something that it was never asked to do. How can Fitbit claim that the board erred by failing to do something that no party requested of it? That's an argument that was simply not made below. Now, Apple's not here. We can't ask why they chose to do that. I believe it's because they wanted to streamline the path to invalidity at the district court by getting what is essentially an incorrect construction of the claims. And the board properly declined to do that, which they have the discretion to do. It's not mandatory that the board correct errors. In fact, it's very limited. And in the context of IPRs, it has been held that that can be done through the motion to amend procedure, which has its own specific requirements. I see that I'm out of time. There are no other questions? Any more questions? No. Thank you. Thank you, Your Honors. Thank you. Mr. Johnson? Thank you, Your Honor. We have two arguments here that you need to address. The first is the argument that there was no argument made in the petition for obviousness under an alternative construction. And the second one was just made is that no one ever asked that the board issue a construction that these were dependent on Claim 3. So let me take the second one first just because I have the papers open. And if I could, Your Honor, in APPLES, in the briefing that was submitted, this is Appendix Page 18. Let me start actually with Appendix 1601. You know, this is a supplemental briefing. And in here, APPLE specifically said the 941, quote, the 941 file history indicates that Claim 4 should depend on Claim 3, not on Claim 1. And then Appendix 1602 goes on, and APPLE says, again, this was additional briefing that was submitted at the request of the board because the SAS decision had come down. And here, APPLE said, quote, these facts indicate that Patent Claim 4's dependence on Claim 1 is a typographical error, and that Patent Claim 4 should depend on Patent Claim 3. We specifically raise that. And ultimately, in the final written decision at Appendix 18, the board addressed it. And the board said, quote, Petitioner suggests the dependency of Claim 4 is incorrect, and that because Claim 3 recites an application, Claim 4 should have depended on Claim 3. These arguments were presented, they were discussed to the board, and they were discussed at the hearing that Mr. Braggalone attended and argued at. So to stand before the court and say that those arguments were not presented is incorrect. Okay, what about the other one? And the other one, Your Honor, you're exactly right. The portion that Mr. Braggalone pointed to was referring to a different argument entirely. When it says the petitioners didn't make that argument, what the— Okay, but what he's saying is, okay, this argument was made in the supplemental briefing, but it couldn't have been made because it wasn't made in the petition originally. That's what he's saying. Well, the—what happened in the original petition, and the facts remain, the original construction, the same construction that we are arguing for before this court in this appeal— Sure. —is the same. Yes, I understand that. That's not the issue. The question is whether the original petition argued alternatively that even if the construction is wrong, we still win because under an alternative construction, it's still obvious. So the petition did not, I believe, did not argue that under the narrower construction, because we didn't even know that there was a narrower construction being promulgated when Apple did its petition. And, by the way, the construction that I heard Mr. Bragglin set forth, it's the first time I really heard an affirmative construction from them. That was not in the petition. We didn't say in the original petition that Claim 3 was also invalid in light of the narrower construction. That was raised in the additional briefing that was submitted, again, pursuant to the board's request in light of the SAS decision. And they've had every opportunity to address that argument. They could have addressed it in the patent owner's response. They could have addressed it during the IPR hearing, ultimately. But none of that was addressed. And what we have before you is the same situation. I mean, this is a situation where, as in Erickson, the board erred by not considering the specific evidence. And whether the court decides it's a typographical error or not, I don't think the court actually needs to reach that decision. The claim construction that Fitbit has submitted is the correct construction based upon the intrinsic evidence that I cited, the claim language itself, the specification when read in connection to those two sentences, the use of plural, of applications, and, again, the extrinsic evidence all confirms it. So if we step aside and we look at what's the right claim construction, we get to Fitbit's construction because, at the end of the day, the intrinsic evidence and the extrinsic evidence supports it. And if you use Fitbit's construction, there is no question that the court should reverse the findings with respect to claims 3, 4, and 5. Those claims are invalid. With that, I'll cede the rest of my time, unless Your Honor has any other questions. Any more questions? Thank you. Thank you both. The case is taken under submission. That concludes this morning's arguments.